STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7534
    FAX: (415) 436-7234
    Leif.Dautch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br> v. <br> EDUAR RAMOS, <br>     Defendant. | CASE NO. 19-CR-00305 RS <br><br> GOVERNMENT'S SENTENCING MEMORANDUM <br><br> Date: March 29, 2021 <br> Time: 1:00 p.m. |

## I. INTRODUCTION

Defendant Eduar Ramos is a Honduran national who has been removed from the country twice before. Nonetheless, Ramos returned to the country illegally and was arrested in July 2019 after selling heroin to an undercover San Francisco Police Officer. A search incident to arrest revealed substantial quantities of heroin, fentanyl, methamphetamine, and crack cocaine. The drug sale and Ramos's arrest occurred in the Tenderloin neighborhood of San Francisco, a community that has been ravaged by open-air drug dealing and a record number of fatal drug overdoses.

On July 11, 2019, the grand jury returned an indictment charging Ramos with distribution of heroin, and possession with intent to distribute controlled substances. The government understands that—pursuant to a plea agreement that will be provided to the Court—Ramos intends to plead guilty to Count One of the indictment (distribution of heroin) during a consolidated change of plea and sentencing hearing on March 29, 2021.[1] The parties waived preparation of a pre-sentence report.

The parties have agreed to jointly recommend that Ramos be sentenced to three months in custody. The government submits that Ramos should also be sentenced to 3 years' supervised release and a $100 mandatory special assessment.

## II. FACTUAL BACKGROUND

On July 2, 2019, an undercover team of San Francisco Police Officers observed Ramos at the corner of Larkin and Grove Streets engaging in drug sales. An undercover officer approached Ramos, asked Ramos for $20 of heroin, and handed him two $10 bills. Ramos walked a few feet away to where another man, Seth Carus, was standing and spoke to him. Carus reached inside his jacket and handed an unknown object to Ramos. Ramos looked down at what Carus gave him, apparently inspecting the object. Ramos walked back to the officer and handed him two Ziploc baggies containing heroin (3.6 grams gross weight). The exchange was captured on video.

Officers arrested Ramos. Officer asked Carus if he had any drugs on him, and he handed officers a bag containing 6 baggies of fentanyl. Officers asked if that was all the drugs he was holding. Carus then handed officers another bag containing 14 bags of fentanyl and 14 bags of heroin. Officers

---

[1] Upon Ramos's guilty plea, the government will move to dismiss the remaining charge.

GOVERNMENT'S SENTENCING MEMORANDUM   1
19-CR-00305

found even more containers of narcotics in Carus's jacket.

In total, officers recovered the following drugs (all approximate gross weights):

- 39.5 grams of fentanyl in multiple plastic bags
- 17 grams of heroin in multiple bindles
- 22.4 grams of crack cocaine in multiple plastic bags
- 7.7 grams of methamphetamine in multiple plastic bags

The substances were all tested and confirmed using NIK or TruNarc. It was also determined that Carus had a history of drug abuse and was intermittently homeless.

### III. CRIMINAL HISTORY

Ramos's criminal history in the United States dates back to 1997. That year, he was convicted of delivering or manufacturing a controlled substance, a felony, and was placed on three years of probation. In 2000, he was convicted of illegal reentry and sentenced to 30 months in BOP custody and three years' supervised release. He was arrested for felony drug transportation in March 2010, this time in San Francisco, and was removed from the country again in April 2010. His whereabouts were unknown between that removal and the instant arrest in 2019. Ramos has been in federal custody since January 13, 2021. Due to the age of his convictions, the government calculates Ramos's Criminal History Category for purposes of the Sentencing Guidelines as Category I.

### IV. PLEA AGREEMENT

The parties have entered into a plea agreement in which Ramos will plead guilty to Count One of the indictment, distribution of heroin, and the government will dismiss Count Two, possession with intent to distribute controlled substances. The parties agree that the Base Offense Level should be 12 under U.S.S.G. § 2D1.1(c)(14), reduced by 2 points for acceptance of responsibility to a Total Offense Level of 10. With a Criminal History Category I, the Guidelines range for Ramos is 6-12 months, falling in Zone B of the Sentencing Table. The parties have agreed to jointly recommend a custodial sentence of three months. The government notes that the three-year period of supervised release is required by statute. S*ee* 18 U.S.C. § 841(b)(1)(C).

GOVERNMENT'S SENTENCING MEMORANDUM   2
19-CR-00305

## V. SENTENCING RECOMMENDATION

The parties jointly recommend that Ramos be sentenced to three months in custody. The government further requests that the Court impose three years of supervised release and a $100 special assessment. This sentence reflects the seriousness of Ramos's offense and his use of a vulnerable member of the community to further his crime, while also accounting for Ramos's minimal recent criminal history.

As the Court is aware, the Tenderloin is one of San Francisco's most diverse neighborhoods. It has the highest concentration of school-aged children and second-highest concentration of elderly residents in San Francisco. Yet, the Tenderloin is under siege by drug dealers; indeed, one does not need to venture more than a block away from our courthouse to find drug dealers openly flouting the law without regard for the consequences of their actions.

Ramos represents one such drug dealer who has decided to sell especially dangerous and addictive drugs such as fentanyl, methamphetamine, and heroin. *See United States v. Lopez*, 104 F.3d 1149, 1151 (9th Cir. 1997) (noting that "[n]arcotics trafficking enables traffickers to reap illicit financial gains and inflict the detrimental effects of narcotics use upon our society"). The victims of drug dealing are legion—from the addicts themselves, who ruin their health and relationships, to community residents who must cope with increased crime and a decreased quality of life in their neighborhood. The particular devastation caused by two of the drugs involved in this case—fentanyl and methamphetamine—is well-documented, driving an explosion of drug overdoses in San Francisco in 2020 that likely topped 700 deaths. *See* Trisha Thadani, *More than one person a day died in SF of an overdose last year. This year is expected to be worse*, S.F. Chronicle, Aug. 30, 2020, *available at* https://www.sfchronicle.com/politics/article/ More-than-one-person-a-day-died-in-SF-of-an-15529006.php; April Dembosky, *Meth's Comeback: A New Speed Epidemic Takes Its Toll on San Francisco*, KQED, Feb. 14, 2019, *available at* https://www.kqed.org/news/11724407/meths-comeback-a-new-speed-epidemic-takes-its-toll-on-san-francisco ("Since 2011, emergency room visits related to meth have jumped 600 percent to 1,965 visits. Admissions to the hospital are up 400 percent to 193. At Zuckerberg San Francisco General Hospital, of 7,000 annual psychiatric emergency visits, 47 percent

GOVERNMENT'S SENTENCING MEMORANDUM   3
19-CR-00305

are people who are not necessarily mentally ill — they're high on meth.").

Those aggravating factors are, in the government's opinion, somewhat mitigated by Ramos's minimal recent criminal history, and the likelihood that Ramos will be removed following his custodial term. The government believes that a three-month custodial sentence, combined with supervised release, a special assessment, a Tenderloin stay-away condition, and a search condition, properly balance those competing considerations.

## VI. CONCLUSION

The government respectfully requests that the Court impose a three-month custodial sentence, a three-year term of supervised release, and a $100 special assessment, all of which will provide just punishment and help deter Ramos and other drug dealers from selling harmful narcotics in San Francisco.

DATED: March 22, 2021                                   Respectfully submitted,

                                                        STEPHANIE M. HINDS
                                                        Acting United States Attorney


                                                        */s/ Leif Dautch*
                                                        LEIF DAUTCH
                                                        Assistant United States Attorney

GOVERNMENT'S SENTENCING MEMORANDUM   4
19-CR-00305